1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

JOSHUA MILLER,

Case No.  24-cv-06792-HSG

8

Plaintiff,

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

9

v.

10

T-MOBILE USA, INC.,

11

Defendant.

Re: Dkt. No. 34

12          Pending before the Court is Defendant's motion for summary judgment, Dkt. No. 34.  The

13   Court finds this matter appropriate for disposition without oral argument and the matters are

14   deemed submitted.  *See* Civil L.R. 7-1(b).  Having carefully considered the parties' arguments, the

15   Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion.

16   **I.    BACKGROUND[1]**

17          Plaintiff was hired as a Mobile Associate at a T-Mobile store in October 2018.  Dkt. No.

18   45-1 ("Miller Dep. Vol. I") 19:5–8, 95:4–10, 121:12–122:5.  At the time of his hire, Plaintiff

19   openly identified as gay, atheist, and mixed race.  *Id.* 23:17–24:1; 30:12–17.  In November 2021,

20   Plaintiff interviewed with Market Manager Cishanie Lontoc Murillo and Retail Store Manager

21   Maria Feeney for a promotion to the role of Retail Associate Manager.  *Id.* 27:1–9; 28:13–16.

22   Both Ms. Murillo and Ms. Feeney were aware of Plaintiff's sexual orientation, and Ms. Murillo

23   was also aware of Plaintiff's race.  *Id.* 30:15–17; 36:3–9

24          About a month later, in or around December 2021 to January 2022, Plaintiff alleges that he

25   began to experience issues with a new trainee, Mr. Georges.  *See* Dkt. No. 35 at 6–7.  Plaintiff

26   testified that Mr. Georges spoke to him "with a gay accent," and asked Plaintiff "probing

27

28   ───────────────
[1] Unless otherwise indicated, the following facts are not disputed.

United States District Court
Northern District of California

questions" about his sexual orientation.  Dkt. No. 45-2 ("Miller Dep. Vol. II") 205:2–25; 209:8–18.  Plaintiff testified that he reported Mr. Georges' conduct to Ms. Murillo, who encouraged him to coach Mr. Georges on appropriate workplace conduct.  *Id.* 209:11–18.  Plaintiff also alleges that Mr. Georges made other inappropriate comments related to his views on race and religion.  *See* Dkt. No. 35 at 7–9.  For example, Mr. Georges told coworkers that "he would only marry a Greek woman because he needed to have pure babies and his blood would not be diluted."  Miller Dep. Vol I 32:4–11.  Mr. Georges also allegedly referred to Ms. Feeney, who was of Filipino descent, as "fresh off the boat" or "FOB." [2]  *Id.* 34:4–36:2.  Additionally, colleagues told Plaintiff that Mr. Georges said Plaintiff and Ms. Feeney "were DEI hires" and that he could do a better job.  *Id.* 113:10–114:3.  Plaintiff alleges that he reported these comments to Ms. Murillo.  *Id.* 58:11–12; 114:4–18.  Ms. Murillo allegedly encouraged Plaintiff to document Mr. Georges' conduct, which he did through emails and entries into Mr. Georges' Workday record.  *Id.* 60:8–25.

Plaintiff alleges that in or around April 2022, Mr. Georges made a false report that Plaintiff used profanity while speaking with a customer, although this report was not entered into Plaintiff's personnel file until September 2022.  *Id.* 156:7–20; 158:3–160:6.  In June 2022, Plaintiff's employment was separated for a three-month period,[3] after which he returned to work with T-Mobile in mid-September 2022.  *Id.* 67:3–11, 69:4–7, 71:16–23.  Plaintiff testified that due to Mr. Georges' discriminatory and harassing conduct, as well as Defendant's failure to remediate it, he suffered escalating stress levels that led him to seek medical leave.  *Id.* 79:11–80:4; 138:10–139:1.

In June 2023, Plaintiff requested and was granted a leave of absence under the California Family Rights Act (CFRA), which lasted from June 26, 2023 through September 18, 2023.  Dkt. No. 34 at 13; Dkt. No. 35 at 11.  Upon his return to work, Plaintiff testified that he had work

---

[2] Mr. Georges also allegedly referred to a female coworker as "a good girl" and told Muslim employees that they "should try worshipping the true God."  Miller Dep. Vol. I 39:3–18.  Additionally, Mr. Georges allegedly told one of the Muslim employees that he was "genetically . . . white" and that they were the "White Wolves of this store," which Plaintiff learned was a reference to a U.K.-based neo-Nazi group.  *Id.* 39:24–40:9.

[3] Throughout the record, both parties refer to this gap in Plaintiff's employment as an administrative leave and as a separation.  Plaintiff testified both that he and others were terminated, and also that he was placed on administrative leave during this period.  *Id.* 67:3–11, 69:4–7.

restrictions, namely, that he should not be scheduled to work with Mr. Georges.  Miller Dep. Vol. I 82:24–83:5.  Ms. Murillo allegedly told Plaintiff that he would have to file a formal complaint against Mr. Georges before he could be scheduled for a shift.  *Id.* 82:5–23.

Meanwhile, shortly before his return to work, in August 2023 Mr. Georges set in motion an internal investigation into Plaintiff's alleged misconduct.  Dkt. No. 34 at 14.  Specifically, Mr. Georges reported that Plaintiff told other employees that he hated Mr. Georges, and that Plaintiff created unflattering AI-generated images depicting and poems about him, both of which Plaintiff shared with other employees.  *Id.*  Initially, Mr. Georges' accusations were investigated by Employee Relations Partner ("ERP") Bill Rogers.  *Id.*  Another ERP, Mara San Felipe, took over the investigation at Plaintiff's request.  Dkt. No. 34 at 14.  Ms. San Felipe allegedly did not interview Plaintiff.  Miller Dep. Vol. II 241:11–13.  Ms. San Felipe's investigation found the allegations against Plaintiff were substantiated, and that Plaintiff behaved improperly for a leader.  Dkt. No. 34-1 ("San Felipe Decl.") ¶ 11, Dkt. No. 34-10 at 2–4; *id.* ¶ 12, Dkt. No. 34-11.  Ms. San Felipe reviewed the investigation report with Ms. Murillo, who relied on its findings in her decision to terminate Plaintiff's employment.  Dkt. No. 34 at 16.  Plaintiff's employment with Defendant ended on October 3, 2023.  Miller Dep. Vol. I at 19:17–20.

In August 2024, Plaintiff filed the operative Complaint, Dkt. No. 1-3, which asserts twelve claims against Defendant, including discrimination, various retaliation claims in violation of California's Fair Employment and Housing Act ("FEHA") and the California Family Rights Act ("CFRA") and the California Labor Code, harassment, failure to prevent discrimination and harassment, and wrongful termination in violation of public policy.  Defendant removed.  Dkt. No. 1.  Following discovery, Defendant filed this motion for summary judgment.  Dkt. No. 34.

## II.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*

But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).  "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotation omitted).  If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.    DISCUSSION

Defendant moves for summary judgment on each of Plaintiff's claims.  First, Defendant argues that Plaintiff's discrimination claim fails because Plaintiff cannot establish a prima facie case, and even if he could, Plaintiff cannot show that its legitimate business reason for terminating him was pretextual. Dkt. No. 34 at 17–21.  Second, Defendant argues that Plaintiff's FEHA retaliation claim fails because Plaintiff has not shown he engaged in protected activity, and to the extent that he does, he has not presented evidence of a causal link between his protected activity and his termination.  *Id.* at 21–22.  Third, Defendant argues that Plaintiff has abandoned his retaliation claims under California Labor Code §§ 98.6, 1102.5, and 6310 by failing to present any evidence in support of these claims, and by failing to address Defendant's arguments in opposition.  Dkt. No. 36 at 9.  Fourth, Defendant argues that Plaintiff's harassment claim fails because the alleged harassment was not based on Plaintiff's protected class(es), because Plaintiff has not shown that it was "severe or pervasive," and because Defendant was not aware of the alleged harassment in any event. Dkt. No. 34 at 24–26.  Fifth, Defendant argues that Plaintiff's

United States District Court
Northern District of California

claim for CFRA retaliation fails because the temporal proximity to his termination, standing alone, is insufficient to establish causation. Dkt. No. 36 at 16–17. Sixth, Defendant argues that Plaintiff's failure to accommodate and interactive process claims fail because Plaintiff has not produced evidence showing that he requested an accommodation or sought to engage in the interactive process. *Id.* at 17–20. Seventh, Defendant argues that because Plaintiff cannot establish his underlying claims under FEHA, his claims for failure to prevent discrimination and harassment and wrongful discharge in violation of public policy fail as a matter of law. *Id.* at 30. Finally, Defendant argues that Plaintiff is not entitled to punitive damages because the alleged conduct does not constitute malice or oppression, and none of the T-Mobile employees involved in the lawsuit were Defendant's managing agents. *Id.* at 30–31. The Court agrees that Plaintiff has failed to present evidence or argument that would support his claims under California Labor Code §§ 98.6 and 6310. The Court also agrees that Plaintiff's discrimination claim does not survive summary judgment on either his disparate impact or cat's paw theory of liability. However, the Court finds that Plaintiff's remaining claims have at least one material issue in dispute and are not appropriate for summary judgment.

### A.    Harassment Claim (Count 5)

To establish a harassment claim, Plaintiff must show "(1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected characteristic; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) [Defendant] is liable for the harassment." *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 876 (2010). Harassment must be "sufficiently severe or pervasive to alter the conditions of [] employment and create an abusive work environment." *Bailey v. S.F. Dist. Att'ys Off.*, 16 Cal. 5th 611, 627 (2024). Additionally, because the harassment Plaintiff allegedly suffered was at the hands of a non-supervisor, Plaintiff must show that Defendant "knew or should have known of the harassment and failed to take appropriate corrective action." Cal. Gov. Code § 12940(j)(1).

Defendant argues that Mr. Georges' remarks were nothing more than "offensive utterances insufficient to rise to the level of severe harassment." Dkt. No. 36 at 15. While it is true that

5

United States District Court
Northern District of California

"simple teasing, offhand comments, and isolated incidences (unless extremely serious) are not sufficient to create an actionable claim for harassment," *Bailey*, 16 Cal. 5th at 628 (quotation omitted), it is also undisputed that Plaintiff took a medical leave in response to increasing stress due to Mr. Georges' comments.  Dkt. No. 34 at 13–14; Dkt. No. 35 at 11.  Plaintiff presented evidence that Mr. Georges behaved in a homophobic and racist manner: for example, as discussed above, Mr. Georges allegedly spoke with a feigned "gay accent" on several occasions, asked probing questions about Plaintiff's sexuality, called Plaintiff's competence into question by alleging he was a "DEI hire," and expressed affinity with a white neo-Nazi group.  Miller Dep. Vol. I 39:24–40:9, 113:10–114:19; Miller Dep. Vol. II 205:2–25; 209:8–18.  A reasonable jury plainly could thus find that Plaintiff has presented sufficient evidence to meet the severe or pervasive requirement.

Defendant also argues that even if Plaintiff can meet the severe or pervasive standard, he has not shown that it was aware of Mr. Georges' conduct.  Dkt. No. 36 at 16.  In any event, Defendant argues that it took corrective action by investigating Mr. Georges' conduct, which Plaintiff concedes, even if he was not "privy" to the details.  *Id.*  The Court finds this argument unpersuasive.  Plaintiff has presented a triable issue of fact as to whether Ms. Murillo was apprised of Mr. Georges' conduct and failed, after her subordinates' repeated complaints, to take appropriate corrective action.  A reasonable juror could also find that Mr. Georges' conduct was ongoing, and that whatever corrective action Defendant initially took was insufficient and inappropriate under the circumstances.  The Court accordingly **DENIES** Defendant's motion for summary judgment on Plaintiff's harassment claim.

### B. FEHA and CFRA Retaliation Claims (Counts 3, 10)

Plaintiff alleges that he suffered retaliation for engaging in protected activity under FEHA and CFRA.  The *McDonnell Douglas* burden-shifting framework applies to retaliation claims under both laws.  *See Yanowitz v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1042 (Cal. 2005) (applying the federal standard to FEHA claims); *see also Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 248 (2016) (applying *McDonnell Douglas* to CFRA retaliation claims).  To establish a prima facie case of retaliation under FEHA, the employee must show that (1) he "engaged in a

protected activity"; (2) he "was subsequently subjected to an adverse employment action"; and (3) "a causal link exists between the two." *Dawson v. Entek Int'l,* 630 F.3d 928, 936 (9th Cir. 2011). Likewise, a cause of action for CFRA retaliation requires "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination . . . because of her exercise of her right to CFRA leave." *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1254 (2008).

If a plaintiff establishes a prima facie case, the burden shifts to the defendant to show a "legitimate, non-discriminatory" reason for subjecting the plaintiff to the adverse employment action. *Id.* If the defendant meets that burden, the plaintiff must raise a genuine issue of material fact as to whether the defendant's legitimate, nondiscriminatory reason is pretextual. *Id.* Retaliation claims "must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2533 (2013). To make out a *prima facie* case of retaliation, Plaintiff must show: "(1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action." *Freitag v. Ayers,* 468 F.3d 528, 541 (9th Cir. 2006).

With respect to Plaintiff's FEHA retaliation claim, Defendant argues that Plaintiff has not sufficiently shown that he engaged in a protected activity. Dkt. No. 36 at 13. As noted above, however, Plaintiff has presented sufficient evidence to create a triable issue of fact on this element: he testified that he continually complained about Mr. Georges' discriminatory conduct. *See Yanowitz*, 36 Cal. 4th at 1131 ("It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory.")

Defendant also contends that Plaintiff cannot demonstrate the necessary "causal link" to establish a prima facie case for FEHA retaliation because the undisputed evidence shows that Defendant was unaware of Plaintiff's complaints until September 18, 2023, after it had initiated an investigation into Plaintiff's misconduct. This argument fails. Plaintiff has presented evidence that as early as January 2022, he and other coworkers complained to Ms. Murillo about Mr.

Georges' discriminatory and harassing conduct.  Miller Dep. Vol. I 58:11–12; 60:8–25; Miller Dep. Vol II 207:19–208:6.  A reasonable jury could credit this testimony to find that Defendant was on notice of Plaintiff's protected activity long before the termination decision took place.  The evidence is sufficient to present a triable issue of fact as to whether Defendant was aware of Plaintiff's protected activity.

Defendant's arguments with respect to Plaintiff's CFRA retaliation claim fare no better. Defendant argues that the intervening cause of Plaintiff's termination was his own misconduct and an investigation that substantiated those findings.  Dkt. No. 34 at 27.  But on Defendant's motion for summary judgment, the Court may not simply assume the truth of the moving party's assertions about what caused Plaintiff's termination.  This is precisely the kind of fact-heavy inquiry that is appropriately determined by a jury, on a full record.  Defendant further argues that the temporal proximity of Plaintiff's return from leave and his termination, standing alone, cannot support a causal connection sufficient to support his CFRA retaliation claim.  Dkt. No. 36 at 16–17.  But Defendant's arguments ignore Plaintiff's testimony that Ms. Murillo was annoyed with him for taking leave in the first place.  Miller Dep. Vol. II 280:6–9.  Additionally, Plaintiff presented evidence that his supervisor initially intended to put him on a performance improvement plan, but that almost immediately after he requested an accommodation, she decided to fire him. *Id.* 260:21–261:8.  Again, the highly fact-bound determination of the reasons for Plaintiff's termination is not appropriate for the Court to make at the summary judgment stage.  Accordingly, the Court **DENIES** summary judgment as to Plaintiff's FEHA and CFRA retaliation claims.

## C.    Labor Code § 1102.5 (Count 8)

Plaintiff also alleges that Defendant retaliated against him in violation of California's whistleblower law, Labor Code § 1102.5.  This provision of the California Labor Code prohibits employers from retaliating against employees "for disclosing information" reasonably believed to be a violation of state or federal law "to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance." Cal. Lab. Code § 1102.5.  Defendant argues that Plaintiff has not presented any evidence that he "reported a violation of state or federal statute, or a violation of or noncompliance with a local,

state, or federal rule or regulation." Dkt. No. 36 at 9.

The Court finds that Defendant's cursory argument ignores the facts and appears to misunderstand the law. To satisfy a claim under § 1102.5, Plaintiff need not have cited a specific law that Defendant allegedly violated. *Ross v. Cnty. of Riverside*, 36 Cal. App. 5th 580, 592–93 (2019) (Labor Code § 1102.5 "does not require" a plaintiff to expressly state that his employer "was violating or not complying with specific state or federal law . . . . It only requires that an employee disclose information and that the employee reasonably believe the information discloses unlawful activity.") Plaintiff testified that he repeatedly complained of Mr. Georges' discriminatory and harassing conduct, and that he told Ms. Murillo that Defendant had done nothing in response. Miller Dep. Vol. I 99:24–100:7. A reasonable factfinder could credit this testimony, finding that Plaintiff put Ms. Murillo, who had "authority" over Plaintiff, on notice when he reported discrimination and harassment, as well as Defendant's failure to prevent discrimination or harassment, in violation of California law. Because Plaintiff has raised triable issues of fact regarding his § 1102.5 retaliation claim, Defendant's motion for summary judgment on that claim is **DENIED**.

### D. Wage and Hour and Occupational Safety Retaliation Claims (Counts 7, 9)

Defendant also argues that Plaintiff has not put forth any evidence to support his claims under California Labor Code §§ 98.6 and 6310. Dkt No. 34 at 22. Section 98.6 protects employees from retaliation for filing or threatening to file a complaint about unpaid wages or other violations with the Labor Commissioner. Section 6310 prohibits employers from retaliating against employees for reporting unsafe working conditions or participating in safety committees. Plaintiff does not respond to this argument in opposition, focusing instead on his FEHA and CFRA retaliation claims. And the record does not reflect any information suggesting that any such reporting occurred. The Court therefore **GRANTS** Defendant's motion for summary judgment as to Counts 7 and 9.

### E. Discrimination Claim (Count 1)

Plaintiff alleges that Defendant discriminated against him and terminated his employment on the basis of his race, sexual orientation, religion, and disability. Dkt. No. 35 at 18–19. FEHA

9

1    prohibits employers from discriminating against employees based on these protected

2    characteristics.  *See* Cal. Gov't Code § 12940(a).  A plaintiff can prove his prima facie case by

3    either direct evidence of discriminatory intent or based on a presumption arising from the

4    *McDonnell Douglas* burden-shifting factors that apply to circumstantial evidence claims.  *See*

5    *Wallis v. J.R. Simplot*, 26 F.3d 885, 889 (9th Cir.1994).

6         Plaintiff raises two theories for his discrimination claim: (1) a disparate impact theory

7    based on his treatment by Ms. Murillo; and (2) a cat's paw theory based on Mr. Georges' bias.

8    Dkt. No. 35 at 20–21.  With respect to his disparate impact theory, the Court finds that the only

9    protected characteristic upon which Plaintiff could even potentially survive summary judgment as

10   to this discrimination claim is his alleged disability.  Plaintiff's complaint alleged discrimination

11   based on nearly every protected characteristic named in FEHA.  *See* Dkt. No. 1-3 at ¶ 6.  But

12   Plaintiff has not presented *any* evidence—direct or circumstantial—that Ms. Murillo held biases

13   against Plaintiff based on his race, sexual orientation, or religion.  And undisputed evidence shows

14   that Ms. Murillo was well aware of Plaintiff's race and sexual orientation when she promoted him

15   in 2021 and rehired him in 2022.  Moreover, Plaintiff does not identify anywhere in the record that

16   Ms. Murillo ever discussed religion with Plaintiff at all.  All that said, as discussed *infra*, Plaintiff

17   presented at least some evidence of Ms. Murillo's potential bias based on Plaintiff's disability.

18        By contrast, Plaintiff proffers substantial facts supporting an inference of discriminatory

19   animus on the part of Mr. Georges based on race, sexual orientation, and religion.  But because

20   there is no dispute that Mr. Georges did not actually make the decision to fire Plaintiff (and

21   actually held a position below Plaintiff's), the only possibly viable basis for a claim based on his

22   statements and actions is the so-called "cat's paw" theory discussed below.

23         **i.    Direct Evidence**

24        Plaintiff asserts that he has shown "a triable issue as to Defendant's actual motivation as a

25   result of direct evidence."  Dkt. No. 35 at 19.  Direct evidence of discriminatory motive is

26   evidence "which, if believed, proves the fact [of discriminatory animus] without inference or

27   presumption."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).  Where a

28   plaintiff presents direct evidence of discrimination, the court does not engage in the *McDonnell*

United States District Court
Northern District of California

10

*Douglas* burden shifting analysis. *Id.*

Considering the record, it might have been possible for Plaintiff to have specified some direct evidence of discriminatory animus by a decisionmaker. But in his brief, Plaintiff includes a twelve-page narrative called "The Facts," without then specifying in any detail in his legal argument which facts he contends meet the direct evidence standard. *Id.* at 5–17 ("The Facts"), 19 (blending a synopsis of some hostile work environment facts, some retaliation facts, some failure to investigate facts, and others before general assertion quoted above). As the Ninth Circuit has explained, it is not the Court's role "to scour the record in search of a genuine issue of triable fact." *Keenan*, 91 F.3d at 1279 (quotation omitted). Rather, "[w]e rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.* (quotation omitted).

And considering the facts that Plaintiff has presented to support his prima facie claim, the Court finds that they amount to circumstantial evidence at most. Plaintiff testified that Ms. Murillo was annoyed when he sought medical leave. Miller Dep. Vol. II 280:6–9. He also testified that he learned from Defendant's employees that, in response to his alleged misconduct, Ms. Murillo had originally planned to give him a performance improvement plan. He further contends that it was not until after he requested ongoing accommodations that his supervisor made the decision to terminate him. *Id.* 260:21–261:8. Even if credited by a reasonable factfinder, these facts require an inference that, based on her apparent annoyance when he sought medical leave, Ms. Murillo was biased against Plaintiff due to his disability. This evidence also requires an inference that it was Ms. Murillo's bias that caused her to change her mind and terminate him. *See Godwin*, 150 F.3d at 1221. By contrast, direct evidence "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005); *see e.g.*, *Tanaka v. United Parcel Service, Inc.*, 2024 WL 4993585, at *10 (N.D. Cal. Sep. 17, 2024) (direct evidence of disability discrimination existed where defendant was aware of plaintiff's disability and "stated that his physical condition was the reason he was place on leave"). Thus, because Plaintiff has failed to present direct evidence of discrimination by anyone who made the challenged employment decisions, the Court

finds it appropriate to analyze Plaintiff's disparate impact theory of discrimination under the *McDonnell Douglas* standard.

### ii.   Circumstantial Evidence

Generally, the plaintiff bears the initial burden to establish a prima facie case of discrimination. *See Godwin*, 150 F.3d at 1220. However, "[w]hen an employer moves for summary judgment . . . 'the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden.'" *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Hanson v. Lucky Stores, Inc.*, 87 Cal. Rptr. 2d 487, 493 (Cal. Ct. App. 1999)). Therefore, "[t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Dep't of Fair Emp.*, 642 F.3d at 745 (quoting *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1247 (2008)). Defendant adopts both approaches.

### a.   Prima Facie Claim

First, Defendant argues that Plaintiff cannot establish a prima facie claim because there is no evidence of discriminatory motive. Mot. at 17–19. To establish a *prima facie* case of discrimination, Plaintiff must prove: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action, and (4) some other circumstances suggest discriminatory motive. *Guz v. Bechtel,* 24 Cal.4th 317, 355 (Cal. 2000). Defendant does not present arguments on the first three elements. In a footnote, Defendant summarily argues Plaintiff has not presented "any facts indicating that his alleged disability was the cause of his separation." Dkt. No. 36 at n. 4. The Court disagrees.

As noted above, Plaintiff testified that Ms. Murillo was annoyed when he sought medical leave. Miller Dep. Vol. II 280:6–9. He also testified that although she originally planned to give him a performance improvement plan, it was only shortly after he requested ongoing accommodations that she decided to terminate him. *Id.* 260:21–261:8. A reasonable factfinder could credit Plaintiff's testimony to find that "some other circumstances suggest discriminatory motive." *Guz*, 24 Cal. 4th at 355; *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104,

United States District Court
Northern District of California

United States District Court
Northern District of California

1111 (9th Cir. 1991) ("the amount [of evidence] that must be produced in order to create a *prima facie* case is very little."), *superseded by statute on other grounds as recognized by Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041–42 (9th Cir. 2005).  Thus, while Plaintiff's evidence is far from overwhelming, the Court finds that Plaintiff has presented at least one triable issue of fact as to his prima facie discrimination claim.

### b.  Plaintiff Fails to Establish a Triable Issue of Fact Regarding Pretext

Defendant also argues that even if Plaintiff can establish a prima facie case, his discrimination claim fails because it terminated him for the legitimate business reason of addressing a violation of its workplace conduct policy.  Dkt. No. 34 at 20–21; Dkt. No. 36 at 12–13.  Plaintiff does not dispute that Defendant has met its burden of contending that its termination decision was based on its investigation of Plaintiff's alleged misconduct.  Therefore, the burden shifts to Plaintiff to show a genuine issue of fact as to whether Defendant's proffered reason is pretextual.  *McDonnell Douglas*, 411 U.S. 792, 802–03 (1973); *see also Guz*, 24 Cal. 4th at 354–55 (2000).

To establish pretext, a plaintiff must present evidence beyond that required to state a prima facie case, but the evidence may be either direct or indirect.  *Godwin*, 150 F.3d at 1220.  Where, as here, a plaintiff presents indirect evidence, it must be "specific and substantial."  *Godwin*, 150 F.3d at 1222.  This standard, however, "is tempered by [the Ninth Circuit's] observation that a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one."  *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015) (quotation marks omitted).  "This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record."  *Id.* (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115, 1124 (9th Cir.2000)).

Plaintiff argues that he and Mr. Georges "should be considered similarly situated since they both report[ed] to [Ms.] Murillo and Plaintiff had no authority to issue corrective action."  Dkt. No. 35 at 20-21.  Differing treatment of similarly situated individuals may be evidence of pretext.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("A showing that the County treated similarly situated employees outside Vasquez's protected class more

favorably would be probative of pretext.")

Comparators must be similar to the plaintiff "in all material respects." *Beck v. UFCW, Local 99*, 506 F.3d 874, 885 (9th Cir. 2007). "Materiality depends on the context and is a question of fact that cannot be mechanically resolved." *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011) (quoting *Hawn v. Exec. Jet Mgmt., Inc*., 615 F.3d 1151, 1157 (9th Cir. 2010)). That said, the Ninth Circuit has found that "individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 642. In *Vasquez*, the plaintiff was a probation officer at a Los Angeles County youth detention facility. *Id.* at 638. The facility's director transferred the plaintiff to a field position and issued a warning letter after another probation officer claimed that, while she served as acting director for the facility, the plaintiff had disobeyed one of her orders. *Id.* 639. The plaintiff had previous conflicts with this probation officer, who had made racially discriminatory remarks toward the plaintiff. *Id.* at 638. The plaintiff claimed his transfer was an adverse employment action that resulted from race discrimination, and the district court granted summary judgment to the County.

On appeal, the Ninth Circuit held that even if the plaintiff could make out a prima facie case under *McDonnell Douglas*, he could not establish that the County's articulated nondiscriminatory reason for the adverse employment action was pretextual. *Id.* at 641. Specifically, the Ninth Circuit rejected the plaintiff's argument that two employees were similarly situated. One employee was not similarly situated to the plaintiff because she was not involved in the same type of conduct. *Id.* In addition, that employee was a supervisor with much greater responsibility, and "[e]mployees in supervisory positions are generally deemed not to be similarly situated to lower level employees." *Id.* The other comparator was not similarly situated because, even though he and the plaintiff held the same level position, he "did not engage in problematic conduct of comparable seriousness to that of [the plaintiff]." *Id.*

As one district court examining *Vasquez* observed:

> "[S]imilarly situated does not require that the employees be *identically* situated. . . the ultimate question that is informed by the similarly situated analysis is whether there is a basis for inferring discriminatory motive: Does the purported purpose of the challenged action require similar treatment of the two employees or does it justify

14

> different treatment due to differences in their status or situation rather than race?  In the above examples, the fact that one employee is a supervisor or works in a different department is irrelevant to the purpose of the discipline. In other situations, those differences may be relevant.  The issue of similarly situated status is therefore fact specific and defies a mechanical or formulaic approach.

*Bowden v. Potter*, 308 F. Supp. 2d 1108, 1117 (N.D. Cal. 2004).  Additionally, the question of "[w]hether two employees are similarly situated is ordinarily a question of fact," *Beck*, 506 F.3d at 885 n. 5 (9th Cir. 2007), and in determining whether a reasonable jury could find two employees similarly situated, the Court must draw all inferences in Plaintiff's favor.  *Bowden*, 308 F. Supp. at 1117.

Here, Plaintiff argues that Mr. Georges should serve as a comparator.  *See* Dkt. No. 35 at 21.  Defendant does not respond to Plaintiff's specific arguments, but asserts generally that "Plaintiff has not established pretext."  Dkt. No. 36 at 12.  But Defendant appears to dispute that Mr. Georges reported to Ms. Murillo, characterizing Mr. Georges as one of Plaintiff's "direct reports" throughout its opening motion.  Dkt. No. 34 at 9.  Regardless of who supervised them, however, the Court finds that it is undisputed that Plaintiff, unlike Mr. Georges, held a supervisory role.  He testified as much in his deposition, acknowledging that it was in part for this reason that he did not socialize much with others outside of work.  Dkt. No. 45-1 at 33:9–17.  The record also reflects that Mr. Georges was a Mobile Expert, a position apparently one step below Plaintiff, who had been promoted from Mobile Expert to the role of Retail Associate Manager.  *See* Dkt. No. 34 at 13 (explaining that Plaintiff was promoted from a Mobile Expert position to that of RAM in 2021); *see also* Dkt. No. 35 at 5.  As to the alleged conduct of Mr. Georges and Plaintiff, even drawing all inferences in Plaintiff's favor, the Court finds that the type of misconduct alleged is materially different, making them differently situated in this regard as well.[4]  The Court therefore finds that, like the plaintiff in *Vasquez*, Plaintiff here has failed to raise an issue of material fact regarding pretext because his proposed comparator is not similarly situated.

### iii.    Cat's Paw

As an alternative to his disparate impact theory, Plaintiff argues that his discrimination

---

[4] The Court makes no judgment as to whose conduct was "worse" for the purposes of this analysis, and simply observes that the type of misconduct alleged is different.

United States District Court
Northern District of California

claim also may proceed based on Mr. Georges' bias, which can be attributed to Defendant under a "cat's paw" theory of liability.  Courts considering the "cat's paw" theory may find an employer liable "for the animus of a supervisor who was not charged with making the ultimate employment decision."  *Staub v. Proctor Hosp.*, 562 U.S. 411, 415–16 (2011).[5]  *Staub* involved a "cat's paw" instigator: the plaintiff's supervisor who held an antimilitary animus in violation of the Uniformed Services Employment and Reemployment Rights Act.  Relying on principles of agency law, the Supreme Court held that an employer may be liable for a supervisor's bias if that supervisor "performs an act motivated by [] animus that is *intended . . .* to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action."  *Id.*, 562 U.S. at 422.  *Staub* left open, however, whether an employer would be liable if a coworker, instead of a supervisor, took the discriminatory action that influenced the ultimate employment decision. California courts have also recognized the "cat's paw" theory of liability in discrimination cases brought under state law.  *See Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 116–20 (2004) (applying cat's paw theory of liability based on biased conduct of plaintiff's supervisor).

The Ninth Circuit has held that even if a biased subordinate was not the final decisionmaker, a plaintiff can establish a causal link by proving that "the biased subordinate influenced or was involved in the decision or decisionmaking process."  *France v. Johnson*, 795 F.3d 1170, 1176 (9th Cir. 2015) (quoting *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007)).  But *France* and *Poland*—and every Ninth Circuit case this Court has found—involved the bias of a subordinate supervisor, *i.e.*, a person who was subordinate to the final decisionmaker, but who acted in a supervisory capacity over the plaintiff.  The Ninth Circuit has yet to address whether a coworker's biased conduct supports cat's paw liability.  And California courts do not

---

[5] Defendant argues in reply that "where a separation decision is based on an independent investigation, any causal link between Mr. Georges' alleged influence and Plaintiff's separation is broken."  Dkt. No. 36 at 11.  But *Staub v. Proctor Hospital*, a case that Defendant relies on for this proposition, affirmatively declined to adopt such a rule.  562 U.S. 411, 421 ("We are aware of no principle in tort or agency law under which an employer's mere conduct of an independent investigation has a claim-preclusive effect.  Nor do we think the independent investigation somehow relieves the employer of 'fault.'  The employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision.").

United States District Court
Northern District of California

1    yet appear to have addressed whether cat's paw liability applies to a coworker's biased conduct

2    either.  *See Reeves*, 121 Cal. App. 4th at 109 n.9 (expressly cabining its analysis of cat's paw

3    liability to supervisors, and noting that the court's "emphasis on the conduct of *supervisors* is not

4    inadvertent" and that "[t]he outcome is less clear where the only actor possessing the requisite

5    animus is a nonsupervisory coworker.") (emphasis in original).   And while some circuits appear

6    to have recognized cat's paw liability based on the biased conduct of a coworker, others have

7    rejected this theory.  *Compare Vasquez v. Empress Ambulance Service, Inc.*, 835 F.3d 267, 275–

8    276 (2nd Cir. 2016) (low-level employee's animus imputed to employer who acted negligently as

9    to information provided by that employee, given the employee's "outsize role" in employer's

10   decision) with *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 291 (4th Cir. 2004)

11   (en banc) (abrogated in part on other grounds as recognized by *Norman v. Call-A-Nurse, LLC*, 783

12   Fed. Appx. 307, 308 (4th Cir. 2019) (biased subordinate with no supervisory or disciplinary

13   authority cannot be regarded as "decisionmaker" simply because he had substantial influence on

14   ultimate decision or played a significant role in adverse employment decision).

15            Unlike apparently all of the cat's paw cases from California and this circuit, Plaintiff here

16   seeks to hold his employer liable for the biased comments of his own subordinate, and based on

17   that subordinate's alleged manipulation of the investigation process, as opposed to the bias of a

18   supervisor or someone otherwise senior to him.  Plaintiff's brief glosses over these doctrinal

19   details, and Defendant's brief does little to address Plaintiff's (albeit cursory) arguments on this

20   issue.  Because Plaintiff's claim arises under FEHA, a California statute, this Court's ultimate task

21   is to try to predict how the California Supreme Court would decide this issue.  "In a case requiring

22   a federal court to apply California law, the court must apply the law as it believes the California

23   Supreme Court would apply it."  *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011)

24   (quotation marks omitted).  Where, as here, there is no controlling California Supreme Court

25   decision," the Court "must follow the decision of the intermediate appellate courts of the state

26   unless there is convincing evidence that the highest court of the state would decide differently."

27   *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015).

28            Given Plaintiff's failure to address the fact that no case suggests that FEHA cat's paw

liability extends to the acts of non-supervisory employees not involved in the actual adverse employment decision, the Court cannot conclude that the California Supreme Court would extend the doctrine to cover the circumstances in this case.  The U.S. Supreme Court's analysis in *Staub* relied on agency principles, and Plaintiff cites no authority that would support treating a line-level employee subordinate to (or even on the same level as) a plaintiff as the employer's "agent" for these purposes.  *See* 562 U.S. at 420 (reasoning that "[t]he one who makes the ultimate decision does so on the basis of performance assessments *by other supervisors*," and identifying the problem with not adopting the majority's rule as being that "the employer will be effectively shielded from discriminatory acts and recommendations *of supervisors* that were *designed and intended* to produce the adverse action)(some emphasis added, some in original).  While it declined to go beyond the facts of the case before it, the California Court of Appeals in *Reeves* similarly characterized the harm that would attach absent cat's paw liability as the immunization of the improper manipulation of the termination decision by an employee's biased supervisor simply because that supervisor did not formally make the ultimate decision.  *See* 121 Cal. App. 4th at 109 and n.9 (Sixth District Court of Appeal explained that "[t]he supervisor's utilization of a complex management structure to achieve the same result cannot have the effect of insulating the employer from a liability that would otherwise be imposed," but acknowledged that "[t]he outcome is less clear where the only actor possessing the requisite animus is a nonsupervisory coworker").  And California cases applying the doctrine focus on the involvement of the supposed cat's paw instigator in the actual employment *decision*, not just some participation in an underlying investigation.  *See, e.g., Hoglund v. Sierra Nevada Memorial-Miners Hosp.*, 102 Cal. App. 5th 56, 76 (2024) (Third District Court of Appeal observed that "[u]nder the 'cat's paw' theory, a showing that any 'significant participant' in the adverse employment decision exhibited discriminatory animus is 'enough to raise an inference that the employment decision itself was discriminatory'") (citations omitted); *Martin v. Bd. of Trs. of Calif. State Univ.*, 97 Cal. App. 5th 149, 169 (2023) (Second District Court of Appeal affirmed summary judgment on cat's paw theory where plaintiff "fail[ed] to show that [former temporary employee supervised by plaintiff] significantly participated in the decision to terminate" plaintiff); *Cf. Lin v. Kaiser Found. Hosps.*,

88 Cal. App. 5th 712, 722, 726–27 (2023) (Second District Court of Appeal reversed grant of summary judgment on cat's paw theory where jury reasonably could have found that negative performance evaluations by plaintiff's purportedly biased supervisor affected decisionmaker's ultimate termination decision).

Accordingly, the Court finds that Plaintiff has not shown that his cat's paw theory is viable under California law on these facts. And because he also fails to show a triable issue of fact as to his disparate treatment theory, the Court **GRANTS** summary judgment for Defendant on Plaintiff's discrimination claim.

### F.    Interactive Process and Failure to Accommodate Claims (Counts 11, 12)

It is unlawful for an employer to "fail to make reasonable accommodation for the known physical or mental disability of an . . . employee." Cal. Gov't Code § 12940(m)(1). An employer "cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts" that (1) "reasonable accommodation was offered and refused"; (2) "there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation"; or (3) "the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." *See Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quoting *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000)).

Defendant argues that Plaintiff has not presented evidence, other than his own testimony, that he required an accommodation upon his return.[6] Dkt. No. 36 at 17. Even if he did make this request, Defendant argues, Plaintiff has not presented any testimony that it was related to his disability. *Id.* The Court finds that there is at least one triable issue of fact as to Plaintiff's reasonable accommodation claim. As Defendant notes, Plaintiff has introduced testimony that

---

[6] Defendant's argument ignores the highly deferential standard this Court must use in reviewing Plaintiff's claims. *See Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (holding that a court may not discount a plaintiff's testimony simply because defendant asserts it is "self-serving").

United States District Court
Northern District of California

1  after he returned from leave, his physician submitted documentation to supplement his initial

2  leave, requesting a scheduling accommodation so that Plaintiff would not work the same shifts as

3  Mr. Georges.  Miller Dep. Vol. II 293:24–295:10.  A jury could find that this request sought a

4  reasonable accommodation related to Plaintiff's disability that he was denied.  *See A.M. v.*

5  *Albertsons, LLC*, 178 Cal. App. 4th 455, 465 (2009) (noting that a single failure to accommodate

6  can be actionable).

7          Relying on *Higgins-Williams v. Sutter Medical Foundation*, Defendant further argues that

8  even if Plaintiff's accommodation request was related to his disability, "an employee's inability to

9  work with a particular employee because of anxiety and stress related to the employee does not

10  constitute a disability under the FEHA."  *Id.*  Defendant overstates the law.  *Higgins-Williams*

11  more narrowly held that "an employee's *inability to work under a particular supervisor because*

12  *of anxiety and stress related to the supervisor's standard oversight* of the employee's job

13  performance does not constitute a mental disability under FEHA."  237 Cal. App. 4th 78, 85

14  (2015) (emphasis in original).  The court in *Higgins-Williams* did not analyze facts similar to those

15  presented here, where the accommodation request stemmed from a coworker's demeaning,

16  discriminatory, and harassing conduct, not a supervisor's run-of-the-mill oversight.  The Court

17  therefore **DENIES** summary judgment as to Plaintiff's failure to accommodate claim on this basis.

18          The Court also concludes there is at least one triable issue of fact as to Plaintiff's claim of

19  failure to engage in the interactive process.  Section 12940(n) of FEHA makes it unlawful for an

20  employer to "fail to engage in a timely, good faith, interactive process with the employee or

21  applicant to determine effective reasonable accommodations, if any, in response to a request for

22  reasonable accommodation by an employee or applicant with a known physical or mental

23  disability."  Cal. Gov't Code § 12940(n).  Defendant had an affirmative obligation to continue the

24  process, given that it was on notice of Plaintiff's disability since he had taken a medical leave.

25  "[T]he fact that an employer took some steps to work with an employee to identify reasonable

26  accommodations does not absolve the employer of liability under section 12940(n).  If the

27  employer is responsible for a later breakdown in the process, it may be held liable."  *Moss v. City*

28  *& Cnty. of San Francisco*, 714 F. Supp. 3d 1167, 1183 (N.D. Cal. 2024) (quoting *Nadaf-Rahrov v.*

1    *Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 985 (2008)).  There is at least a triable issue of

2    fact as to whether Defendant failed to engage in the interactive process by, as Plaintiff alleges,

3    deciding to fire him rather than put him on a performance improvement plan.  Accordingly, the

4    Court **DENIES** summary judgment as to Plaintiff's failure to accommodate and interactive

5    process claims.

6    **G.     Claims for Failure to Prevent Discrimination and Harassment and Wrongful**
       **Discharge in Violation of Public Policy (Counts 2, 4, 6)**

7

8         Defendant argues that Plaintiff's claims for (1) failure to prevent discrimination and

9    harassment; and (2) wrongful termination are each derivative of Plaintiff's other claims, such that

10   the Court should also grant summary judgment as to these claims.  Dkt. No. 34 at 30, Dkt. No. 36

11   at 18–19.  Since the Court denies summary judgment as to Plaintiff's discrimination and

12   retaliation claims, and since Defendant offers no alternative arguments in favor of summary

13   judgment on these derivative claims, the Court **DENIES** Defendant's motion for summary

14   judgment as to these two claims.

15   **H.     Punitive Damages**

16        California Civil Code section 3294 allows for punitive damages only when "it is proven by

17   clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice"

18   and limits corporate employer liability to instances where an officer, director, or managing agent

19   has advance knowledge and consciously disregards, authorizes, or ratifies the wrongful conduct.

20   *Id.* § 3294(a)–(b).  "'Malice' means conduct which is intended by the defendant to cause injury to

21   the plaintiff or despicable conduct which is carried on by the defendant with a willful and

22   conscious disregard of the rights or safety of others."  *Id.* § 3294(c)(1).  "'Oppression' means

23   despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of

24   that person's rights."  *Id.* § 3294(c)(2).  And a "managing agent must be someone who exercises

25   substantial discretionary authority over decisions that ultimately determine corporate policy.

26   *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 573 (1999).  Corporate policies "affect a substantial

27   portion of the company and . . . are the type likely to come to the attention of corporate

28   leadership."  *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 715 (2009), *as modified* (Feb. 10, 2010).

United States District Court
Northern District of California

21

1   "[I]n the usual case, the question of whether the defendant's conduct will support an award of

2   punitive damages is for the trier of fact, since the degree of punishment depends on the peculiar

3   circumstances of each case." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App.

4   4th 1004, 1053 (2009) (quotation omitted).

5          At this stage and on the record before it, the Court cannot conclude as a matter of law that

6   no reasonable jury could find clear and convincing evidence that Defendant acted with "willful

7   and conscious disregard" of Plaintiff's rights (malice) or inflicted "cruel and unjust hardship"

8   upon him "in conscious disregard" of his rights (oppression). *See* Cal. Civ. Code § 3294(c)(1)–

9   (2). Likewise, the Court cannot determine as a matter of law that Ms. Murillo was not a managing

10  agent given her discretionary disciplinary decisions and her broad management of Defendant's

11  stores. "The scope of an employee's discretion and authority is a question of fact." *Tilkey v.*

12  *Allstate Ins. Co.*, 56 Cal. App. 5th 521, 554 (2020). Plaintiff presents evidence that Ms. Murillo

13  oversaw scores of employees at several branches. Dkt. No. 45-3 ("Murillo Dep.") 11:6–12; 39:6–

14  14. He also presents evidence that she exercised broad authority over personnel matters, including

15  the power to hire, discipline, and terminate employees. *Id.* 8:7–10:2; *cf. Tilkey*, 56 Cal. App. 5th

16  at 555 (finding that a supervisor "would make the decisions about discipline" and "[i]n doing so, []

17  formulated operational corporate policy at least related to discipline and attendance"). As a result,

18  this is the "usual case" in which an assessment of whether Plaintiff's evidence can clear the high

19  bar necessary to recover punitive damages must await the presentation of a full factual record at

20  trial. *See Spinks*, 171 Cal. App. 4th at 1053. The Court **DENIES** Defendant's motion for

21  summary judgment as to punitive damages.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1

**IV.    CONCLUSION**

2        The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary

3  judgment, Dkt. No. 34.  The Court's summary judgment holdings here are based on the stringent

4  standards for obtaining summary judgment in employment cases, and the Court expresses no view

5  as to whether a jury ultimately will find Plaintiff's case persuasive.  *See Yartzoff v. Thomas*, 809

6  F.2d 1371, 1377–78 (9th Cir. 1987).[7]

7        **IT IS SO ORDERED.**

8  Dated:    11/5/2025

9

10  HAYWOOD S. GILLIAM, JR.
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

---

[7] Throughout its papers, Defendant made what the Court found to be excessive and distracting use of **bolding**.  For the future, the parties are advised that the Court finds this practice **unhelpful** and believes that emphasis is only effective when used **sparingly, if at all**.

23